DONALD AMAMGBO
7901 OAKPORT, SUITE 4900
OAKLAND, CA 94621
510 615 6000/FAX: 510 615 6025

REGINALD TERRELL
THE TERRELL LAW GROUP
223 25TH STREET
RICHMOND 94804
510 237 9700/FAX:510 237 4616

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VOLTAIRE DEFENSOR, individually and on Behalf of all Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>MATSON NAVIGATION COMPANY, INC., ALEXANDER & BALDWIN, INC., and HORIZON LINES, LLC,<br><br>Defendants | No. C09-00014<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Voltaire Defensor, individually and behalf of a class of those similarly situated, brings this action for damages and injunctive relief pursuant to the antitrust laws of the United States against defendants, demanding a trial by jury, and complaining and alleging the follows:

## I. NATURE OF THE CASE

1. This lawsuit is brought as a class action on behalf of all individuals and/or entities who purchased Domestic Noncontiguous Off Shore Trades Services (defined herein) for trade routes between Hawaii and the continental United States, or its territories and/or possessions (the "Hawaii trade routs") (collectively, "Hawaii shipping services"), dly from defendants, their predecessors, parents, or controlled subsidiaries and/or affiliates from at least as early as May 23, 2004, or earlier. Plaintiff alleges that during the class period (defined herein) the defendants

-1-

COMPLAINT

conspired to allocate markets and/or engaged in other anticompetitive conduct concerning Hawaii shipping services. Because of defendants' unlawful conduct, plaintiff and other class members paid artificially inflated prices for Hawaii shipping services, as a result, have suffered antitrust injury to their business and/or property.

2. Specifically, this case focuses on defendants' unlawful agreements to, *inter alia*, increase and/or fix fuel and other surcharges (which account for approximately 20% of defendants' revenue), and/or decrease capacity to bolster prices and profits.

3. Fuel surcharges have moved in lockstep since 1999, with defendants Matson and/or Horizon, by agreement, imposing identical or virtually identical surcharges. However, the lockstep changes in fuel surcharges, which are calculated as a percentage of revenue, make no economic sense as defendants have different utilization rates and/or costs structures. The lockstep nature of the fuel surcharges, combined with defendants' differing cost structures, belies any argument that the surcharges are because of anything other than collusion.

4. Similarly, defendants have and/or had unique control over capacity in the Hawaii market and agreed to carry each other's extra cargo at discount prices. Absent this agreement each defendant would have needed to increase their own capacity, and that increased capacity would have placed downward pressure on prices.

## II.   JURISDICTION AND VENUE

5. This action is instituted pursuant to Sections 4 and 15 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover treble damages and costs of suit, including reasonable attorneys' fees, against defendants for the injuries sustained by plaintiff and the class members because of the violation, as hereinafter alleged, of Section 1 of the Sherman Act, 15 U.S.C, § 1.

6. This action is also instituted to secure injunctive relief against defendants to prevent them from further violations of Section 1 of the Sherman Act, as hereinafter alleged.

7. Jurisdiction is conferred upon this court pursuant to 28 U.S.C. §§ 1331 and 1331 and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

8. Venue is found in this judicial district pursuant to Sections 4 , 12 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a), 22 and 26 and 28 U.S.C. § 1391(b), (c) and (d). Venue is

proper in this judicial district because during the class period one or more defendants resided, transacted business, was found and/or had agents in this district, and because a substantial part of the events giving rise to plaintiff's claim occurred and/or a substantial portion of the affected interstate trade and/or commerce described below has been carried out in this district.

9. Defendants, on information and belief, maintain offices, have agents, transact business and/or are found within this judicial district.

**Plaintiff**

10. Plaintiff Voltaire Defensor was at all relevant times operated a California business with its principal place of business in Alameda County, California. During the relevant time period, plaintiff purchased California shipping services from defendants. The prices paid for California shipping service plaintiff purchased from defendants were, because of the conspiracy herein alleged, higher than they otherwise would have been, and because of the alleged conspiracy, plaintiff was injured in his business and/or property because of the antitrust violations alleged herein.

**Defendants**

11. Defendant Matson Navigation Company, Inc. ("Matson") is a Hawaiian corporation with its principal place of business in Oakland, California. Matson is a wholly-owned subsidiary of defendant Alexander & Baldwin, Inc. Matson is a principal provider of Hawaii shipping services. Defendant Matson marketed and/or sold Hawaii shipping services in this judicial district and in the United States and/or its territories and possessions during the class period.

12. Defendant Alexander & Baldwin, Inc. ("A&B") is a Hawaiian corporation with its principal place of business in Honolulu, Hawaii. A&B is a multi-industry corporation whose ocean transportation operations are conducted by its wholly-owned subsidiary Matson. By and through Matson, A&B sold Hawaii shipping services in this judicial district and the United States and/or its territories and possessions during the class period.

13. Defendant Horizon Lines, LLC ("Horizon"), is a Delaware limited liability company with its principal place of business in Charlotte, North Carolina. Horizon is a wholly-

1  owned operating subsidiary of Horizon Lines, Inc., a Delaware corporation with its principal
2  place of business in Charlotte, North Carolina. Defendant Horizon marketed and/or sold Hawaii
3  shipping services in this judicial district and the United States and/or its territories and
4  possessions during the class period.

5  14. Whenever in this complaint reference is made to any act, deed and/or transaction
6  of any corporation, the allegation means the corporation engaged in the act, deed and/or
7  transaction by and/or through its officers, directors, agents, employees and/or representatives
8  while they were actively engaged in the management, direction, control and/or transaction of the
9  corporation's business or affairs.

10  15. Various other persons, firms and/or corporations, not named as defendants in this
11  complaint, have participated as co-conspirators with defendants in the violations alleged herein,
12  and aided, abetted and/or performed acts and/or made statements in furtherance of the conspiracy.

### III. THE JONE ACT

16. For purposes of this action, "Domestic Noncontiguous Off Shore Trades Services" are merchandise shipping services, primarily by container and/or barge, in the coastwide (*i.e.*, domestic) trade. These services are governed by the Merchant Marine Act of 1920, historically referred to as the "Jones Act". 46 U.S.C. § 100 *et seq.*

17. Coastwide trade includes the transportation of merchandise between Hawaii and points in the United States and/or most of its inland territories and possessions. See 46 U.S.C. § 55191 (extending coastwide laws to island territories and possessions except American Samoa, the Northern Mariana Island and the United States Virgin Islands).

18. The Jones Act prohibits any goods "transported by water, or by land and water . . . between points in the United States . . . either directly or via a foreign port" from being shipped unless the vessel "is wholly-owned by citizens of the United States for purposes of engaging in the coastwide trade" and has been issued a "certificate of documentation" and/or it is exempt from documentation. 46 U.S.C. § 55102.

19. The coastwide trade laws - i.e., the Jones Act – thus grants an exclusive privilege to certain United States owned vessels to engage in the coastal trade concerning the shipment of

merchandise to and/or from United States territories, possessions, and/or non-contiguous states, including shipments to and from Hawaii.

20. The Jones Act seeks "to protect American shipping industry already engaged in the coastwide trade." *Marine Carriers Corp. v. Fowler*, 429 F.2d 702, 708 (2d Cir. 1970).

21. The Jones Act's restriction on the carriage of domestic cargo to United States-owned ships, combined with the relatively small size of these trade routes, results in an oligopolistic markets where only a very small number of carriers serve any particular route.

22. Collusion, market sharing, allocation of customers, restriction of capacity and other anticompetitive conduct is illegal pursuant to the Sherman Act, subject to certain exemptions not applicable here. See 46 U.S.C. § 40307.

### IV. THE HAWAII TRADE ROUTES MARKET VIOLATIONS ALLEGED

23. The Jones Act limits competition in the coastwide market for shipping such that a few carriers dominate these trade lanes. As one analyst explained: "The United States Jones Act trade lanes have historically been oligopolies."

24. There are numerous barriers to entry for companies attempting to enter the Hawaii trade routes market. Competition is limited by, *inter alia*: the Jones Act; substantial upfront costs; and a substantial lag time between deciding to enter and actually being able to enter because of the need for United States built ships - which are limited in supply and take time to construct - and adequate port facilities. Thus, competitors and/or potential market entrants lack the capacity to increase output in the short run.

25. As defendants Horizon explained in its 2007 form 10-K: "Given the limited number of existing Jones Act qualified vessels, the high capital investment and long delivery lead times associated with building a new containership in the United States, the substantial investment required in infrastructure and the need to develop a broad base of customer relationships, the markets in which we operate have been less vulnerable to over capacity and volatility than internal shipping markets."

26. The high degree of concentration in the industry makes it easier for competitors to engage in anticompetitive conduct because fewer, repeat providers control the vast majority of

-5-

COMPLAINT

any Jones Act shipping routes.

27. In the Hawaii trade routes, for example, defendants Horizon and Matson account for virtually 100 percent of the market.

28. Hawaii shipping services are highly fungible, such that purchasers decide to purchase and competitors compete largely based on price.

29. Though fungible between Jones Act carriers, Hawaii shipping services are not readily substitutable for by other methods of transportation. For example, shipping heavy, bulky goods via air freight is prohibitively expensive, and there obviously are no road and/or rail routes between Hawaii and the mainland United States.

30. Price fixing and market allocation is especially pernicious within a highly concentrated, fungible market for which adequate substitutes do not exist, as here in the Hawaii trade routes market.

31. The structure of the Hawaii trade routes market is such as to make secret price-fixing feasible. The market is highly concentrated with few sellers, almost all of whom are the defendants. Further, Domestic Noncontiguous Off Shore Trades Services are a highly standardized product. Demand is inelastic and there are barriers to entry in the form of expensive tools of the trade and economies of scale.

32. Anti-competitive agreements in Hawaii trade routes can take various forms, including but not limited to: market allocations; restricting supply; and bunker/fuel and other surcharges.

33. Beginning at least as early as May 23, 2004 or earlier, the exact dates being unknown to plaintiff, defendants engaged in a continuing agreement, understanding and conspiracy in restraint of trade to restrict competition, allocate customers, restrict capacity, and otherwise engage in anticompetitive conduct to allocate the market for and/or engage in anticompetitive conduct concerning the Hawaii shipping services and/or engaged in market allocation of those services in the United States, its territories and/or possessions in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

34. The contract, combination and/or conspiracy consisted of a continuing agreement,

understanding and concert of action between the defendants, the substantial terms of which were to allocate the market for and/or to engage in anticompetitive conduct concerning Hawaii shipping services in the United States, its territories and/or possessions.

35. In formulating and/or effectuating the aforesaid contract, combination and/or conspiracy, defendants did those things such that they unlawfully combined and/or conspired to do, including, among other things:

    a. agreeing to allocate the market and/or customers for Hawaii shipping services;

    b. exchanging information on customers and/or capacity and;

    c. monitoring and/or implementation of the arrangements among cartel members.

36. The activities described above have been engaged in by defendants for the purpose of effectuating the unlawful agreements concerning market allocation, restricting capacity, and/or other anticompetitive conduct concerning Hawaii shipping services.

37. There are no Jones Act exemptions not applicable to this matter at this time.

## V. THE HAWAII TRADE ROUTES

38. The Hawaii trade routes market is distinct from other Jones Act routes.

39. The Hawaii trade routes market is dominated by defendants Matson and Horizon.

40. Defendants have access to industry data (including data from the Port Import Export Reporting Service) concerning the Hawaii trade routes market and participate in trade associations (like the Maritime Cabotage Task Force) which facilitates efficient monitoring of defendants' collusive agreements.

    a. Fuel Surcharges

41. In 1999 or earlier, defendants began imposing fuel surcharges, and those surcharges have grown overtime. The surcharges are calculated as a percentage of revenue.

42. Defendants agreed they would set fuel surcharges at identical rates, rates were divorced from any precompetitive and/or lawful economic rationale. The surcharges are reflected in the below chart:

Hawaiian Ocean Shipping Rate Increases 1999 to 2007

| Company | Approximate Date of Announcement | Fuel Surcharge Increase/Decrease | Per Container Fee Increase | Terminal Handling Fee Increase (Per Container |
|---|---|---|---|---|
| Matson Navigation | 10/1/1999 | 1 to 1.75% | | |
| Horizon Lines | 10/1/1999 | 1 to 1.75% | | |
| Matson Navigation | 2/2000 | 1.75 to 2.25% | | |
| Horizon Lines | 2/2000 | 1.75 to 2.25% | | |
| Matson Navigation | 4/2000 | 2.25 to 3.25% | | |
| Horizon Lines | 4/2000 | 2.25 to 3.25% | | |
| Matson Navigation | 10/2000 | 3.25 to 4.25% | | |
| Horizon Lines | 10/2000 | 3.25 to 4.25% | | |
| Matson Navigation | 11/2001 | 4.25 to 3.25% | | |
| Horizon Lines | 11/2001 | 4.25 to 3.25% | | |
| Matson Navigation | 5/2002 | 3.25 to 4.75% | | |
| Horizon Lines | 5/2002 | 3.25 to 4.75% | | |
| Matson Navigation | 10/2002 | 4.75 to 6.00% | | |
| Horizon Lines | 10/2002 | 4.75 to 6.00% | | |
| Matson Navigation | 3/2003 | 6.00 to 7.50% | | |
| Horizon Lines | 3/2003 | 6.00 to 7.50% | | |

COMPLAINT

-8-

| | | | | |
|---|---|---|---|---|
| Matson Navigation | 5/2004 | 7.5 to 8% | | |
| Horizon Lines | 5/2004 | 7.5 to 8% | | |
| Matson Navigation | 6/2004 | 8 to 8.8% | | |
| Horizon Lines | 6/2004 | 8 to 8.8% | | |
| Matson Navigation | 10/2004 | 8.8 to 9.2% | | |
| Horizon Lines | 10/2004 | 8.8 to 9.2% | | |
| Matson Navigation | 4/2005 | 9.2 to 10.5% | | |
| Horizon Lines | 4/2005 | 9.2 to 10.5% | | |
| Matson Navigation | 7/2005 | 10.5 to 11.5% | | |
| Horizon Lines | 7/2005 | 10.5 to 11.5% | | |
| Matson Navigation | 10/2005 | 11.5 to 13% | | |
| Horizon Lines | 10/2005 | 11.5 to 13% | | |
| Matson Navigation | 11/2005 | | $125/Westbound $75/Eastbound Approx. 3.9% | $60/Westbound $30/Eastbound Approx. 22$ |
| Horizon Lines | | | $125/Westbound $75/Eastbound Approx. 3.9% | $60/Westbound $30/Eastbound Approx. 22$ |
| Matson Navigation | 12/2005 | 13 to 15% | | |

| | | | | |
|---|---|---|---|---|
| Horizon Lines | 12/2005 | 13 to 15% | | |
| Matson Navigation | 3/2006 | 15 to 18.5% | | |
| Horizon Lines | 3/2006 | 15 to 18.5% | | |
| Matson Navigation | 5/2006 | 18.5 to 21.25% | | |
| Horizon Lines | 5/2006 | 18.5 to 21.25% | | |
| Matson Navigation | 9/2006 | 21.25 to 19.75% | | |
| Horizon Lines | 9/2006 | 21.25 to 19.75% | | |
| Matson Navigation | 10/2006 | 19.75 to 18.75% | | |
| Horizon Lines | 10/2006 | 19.75 to 18.75% | | |
| Matson Navigation | 11/2006 | | $100/Westbound $50 Eastbound Approx. 3.3% | $150/Westbound $75/Eastbound Approx. 45-46% |
| Horizon Lines | | | $100/Westbound $50 Eastbound Approx. 3.3% | $150/Westbound $75/Eastbound Approx. 45-46% |
| Matson Navigation | 1/2007 | 18.75 to 17.5% | | |
| Horizon Lines | 1/2007 | 18.75 to 17.5% | | |
| Matson Navigation | 2/2007 | 17.5 to 19.5% | | |
| Horizon Lines | 2/2007 | 17.5 to 19.5% | | |

| | | | | |
|---|---|---|---|---|
| Matson Navigation | 4/2007 | 19.5 to 20.75% | | |
| Horizon Lines | 4/2007 | 19.5 to 20.75% | | |
| Matson Navigation | 5/2007 | 20.75 to 22.5% | | |
| Horizon Lines | 5/2007 | 20.75 to 22.5% | | |
| Matson Navigation | 7/2007 | 22.5 to 24% | | |
| Horizon Lines | 7/2007 | 22.5 to 24% | | |
| Matson Navigation | 10/2007 | 24 to 26% | | |
| Horizon Lines | 10/2007 | 24 to 26% | | |
| Matson Navigation | 11/2007 | 26 to 29% | | |
| Horizon Lines | 11/2007 | 26 to 29% | | |

43. These lockstep surcharges calculated as a percentage of revenue make no economic sense because defendants have different cost structures and utilization rates. For example, defendants Horizon and Matson have different operating expenses and margins. If defendants' surcharges were a reflection of economics rather than collusion, the surcharges would not have moved in lockstep when defendants' margins were different.

    b.    Artificial Capacity Limitations

44. Defendants agreed to limit capacity and thereby increasing rates to supra-competitive levels.

45. Defendants effectuated this agreement by carrying - at vastly discounted rates - each other's containers.

46. Absent this agreement, the only way either competitor would have been able to

1  maintain its current level of business would have been by adding capacity. This additional
2  capacity, however, would have had the (procompetitive) effect of lowering prices.

3      47.   Defendants are collaborating - not competing - with each other to stabilize the
4  amount of shipping services available, and thereby maintain supra-competitive prices.

5      48.   Unsurprisingly, the cost of shipping to Hawaii has risen substantially in recent
6  years, in part due to defendants' collusive anticompetitive agreements.

## VI. GOVERNMENT ANTITRUST INVESTIGATION

49. On or about April 17, 2008, it was disclosed that the United States Department of Justice had begun an investigation into the Domestic Noncontiguous Shore Trades Services industry in a similar market. On or about April 17, defendants Horizon and Matson both disclosed that either warrants to search their premises had been issued or that they had been subpoenaed in connection with the DOJ's investigation. The investigation was not limited to the Puerto Rico market, and defendant Matson was being investigated by the DOJ though it has no presence in the Puerto Rico market.

50. To obtain search warrants in the United States had to have probable cause, accepted by a court, to believe it would obtain evidence of an antitrust violation from the search warrant - that is, the United States had to have evidence sufficient to warrant a person of reasonable caution to believe raiding the offices of a seemingly lawful business would uncover evidence of antitrust violations and the court had to have examined and accepted the evidence produced. That belief, which was recounted in a sworn affidavit and/or by testimony, must be based on reasonably trustworthy information.

## VII. CLASS ACTION ALLEGATIONS

51. Plaintiff brings this action on behalf of itself and/or as a class action pursuant to the provisions of Rule 23(a) and/or (b)(2) & (b)(3) of the Federal Rules of Civil Procedure on behalf of all members of the following class:

> All persons (excluding governmental entities, defendants, co-conspirators, other sellers or providers of Hawaii shipping services, and the present and former parents, predecessors, subsidiaries, and affiliates of the foregoing) who purchased Hawaii shipping services directly from any of the defendants, or any present or former parent, subsidiary or affiliate thereof, at any time during the period from at

-12-

COMPLAINT

least May 23, 2004, or earlier, until the effects of defendants' anticompetitive conduct cease.

52. Plaintiff believes there are thousands of class members as above described, the exact number and/or their identities are known by defendants.

53. The class is so numerous and/or geographically dispersed that joinder of all members is impracticable.

54. There are questions of law and/or fact common to the class, which questions relate to the existence of the conspiracy alleged, and/or the type and/or common pattern of injury sustained because thereof, including, but not limited to:

    a. Whether defendants engaged in a combination and/or conspiracy among themselves to allocate the market for and/or engage in other anticompetitive conduct concerning Hawaii shipping services;

    b. The identity of the participants in the conspiracy;

    c. The duration of the conspiracy alleged in this complaint and/or the nature and/or character of the acts performed by defendants in furtherance of the conspiracy;

    d. Whether the conspiracy violated Section 1 of the Sherman Act;

    e. Whether the conduct of defendants, as alleged in this complaint, caused injury to the business and/or property of plaintiff and/or other class members;

    f. The effect of defendants' conspiracy on the prices of Hawaii shipping services sold during the class period; and

    g. The appropriate measure of damages sustained by plaintiff and other class members.

55. Plaintiff is a class member, plaintiff's claims are typical of the claims of the class members, and plaintiff will fairly and adequately protect the interests of the class members.

56. Plaintiff's interest are coincident with and not antagonistic to those of the other class members.

57. Plaintiff is represented by counsel who is competent and experienced in the prosecution of antitrust and class action litigation.

58. The prosecution of separate actions by individual class members would create a risk of inconsistent and/or varying adjudications.

59. Defendants have acted, and refused to act, on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class as a whole.

60. The questions of law and fact common to the class members predominate over any questions affecting only individual members, including legal and/or factual issues relating to liability and damages.

61. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## VIII. TRADE AND COMMERCE

62. The activities of defendants, as described in this complaint, were within the flow of, and substantially affected, interstate commerce.

63. During the time period covered by this complaint, defendants marketed and sold Hawaii shipping services.

64. Defendants, and each of them, have used instrumentalities of interstate commerce to market and sell Hawaii shipping services.

65. Defendants have marketed and sold Hawaii shipping services in a continuous and uninterrupted flow of interstate commerce to customers located in states other than the states in which defendants market and sell such services.

## IX. FRAUDULENT CONCEALMENT

66. Plaintiff had no knowledge of defendants' unlawful self-concealing conspiracy and could not have discovered the contract, combination and/or conspiracy until April 17, 2008 by the exercise of due diligence because of the deceptive practices and/or techniques of secrecy employed by defendants to avoid detection of, and fraudulently conceal, their contract, combination and/or conspiracy.

67. Because of the contract, combination and/or conspiracy was kept secret by defendants, plaintiff was unaware of the anticompetitive conduct concerning Hawaii shipping services that were secretly agreed upon as alleged herein. It was not until April 17, 2008, the

date on which it was disclosed that the Federal Bureau of Investigation executed search warrants on the premises of defendant Horizon, that plaintiff became aware, and/or could have become aware with the exercise of reasonable diligence, of defendants' anticompetitive conduct.

68. Because of the fraudulent concealment of the conspiracy, plaintiff asserts the tolling of the applicable statute of limitations affecting the right of action by plaintiff.

## X.  COUNT 1 - UNLAWFUL PRICE SETTING IN VIOLATION OF SHERMAN ACT § 1, 15, U.S.C. § 1

69. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this complaint.

70. Defendants colluded and agreed in unlawful restrain of trade to fix prices and surcharges and allocate the Hawaii trade routes market.

71. Defendants' unlawful conduct resulted in artificially high supra-competitive prices charged by defendants to plaintiff and the class members as direct purchasers of Hawaii shipping services.

72. Plaintiff and class members had to pay more for Hawaii shipping services than they would have paid in a competitive marketplace, unfettered by defendants' collusive and unlawful price-fixing.

73. Plaintiff seeks to recover for these overcharge damages.

74. Because of defendants' scheme, plaintiff and the class members have been injured and financially damaged in their respective businesses and property, in amounts which are presently undetermined. Plaintiff's injuries consist of paying higher prices to purchase Hawaii shipping services it would have paid absent defendants' conduct. Plaintiff's injuries are of the type the antitrust laws were designed to prevent and flow from which makes defendants' conduct unlawful.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38(b), plaintiff demands a trial by jury of all of the claims asserted in this complaint so triable.

**PRAYER FOR RELIEF**

A. The court determine that this action may be maintained as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure;

B. That the contract, combination and/or conspiracy, and the acts done in furtherance thereof by defendants, be adjudged to have been in violation of Section 1 of the Sherman Act;

C. That judgment be entered for plaintiff and class members against defendants for three times the amount of damages sustained by plaintiff and the class as allowed by law, together with the costs of this action, including reasonable attorneys' fee.

D. That defendants, the affiliates, successors, transferees, assignees, and the officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from, continuing to engage in the anticompetitive conduct described herein.

F. That plaintiff and class members have such other, further and different relief as the court may deem just and proper under the circumstances.

Date: January 5, 2009                              Respectfully submitted,

By: _____
DONALD AMAMGBO
REGINALD TERRELL
Attorneys for Plaintiffs

-16-

COMPLAINT